OSMOND v. OSMOND (OREGON SHORT LINE R. CO.,
Garnishee; OSMOND, Interpleader).

No. 4071. Decided March 27, 1924. (224 Pac. 882.)

1. APPEAL AND ERROR—SUPREME COURT CANNOT, IN DEALING WITH
FACTS, INJECT INFERENCES AND CONCLUSIONS NOT APPEARING IN
RECORD. The Supreme Court, in dealing with facts cannot in-
ject inferences and conclusions not appearing in the record; the
functions of the court in that respect being limited and circum-
scribed.

2. DIVORCE—ASSIGNMENT BY DIVORCED SON OF WAGES TO HIS
MOTHER NOT FRAUDULENT AS MATTER OF LAW. Defendant's as-
signment to his mother of his wages due from the garnishee
to secure obligations already incurred for advances and board,
when made in good faith, was not, because of the relationship
of the parties, fraudulent and void as a matter of law either
as between themselves or as against defendant's divorced wife,
who had a claim for unpaid alimony.

Appeal from District Court, Third District, Salt Lake
County; *L. B. Wight*, Judge.

Action by Ruby Eleanor Osmond against Harry Leslie
Osmond, in which the Oregon Short Line Railroad Company
was made garnishee, and in which Mrs. Eliabeth Osmond
interpleaded. Judgment for interpleader, and plaintiff
appeals.

AFFIRMED.

*William Reger*, of Salt Lake City, for appellant.

*Leslie Frazer*, of Salt Lake City, for respondent.

THURMAN, J.

This was a proceeding in garnishment, instituted by the
plaintiff against Harry L. Osmond as defendant and the
Oregon Short Line Railroad Company as garnishee, to re-

cover certain money in the hands of said garnishee alleged to be due and owing to said defendant as wages for service rendered said garnishee company.

The garnishee made response to the writ of garnishment by denying it was indebted to the defendant Osmond, and further alleged that prior to the service of the writ an assignment for the amount due defendant had been filed with the garnishee company, by which the said defendant had assigned the amount due and owing to him to Elizabeth Osmond. The answer of the garnishee was traversed by the plaintiff, and upon the hearing it developed that Elizabeth Osmond was a necessary party to the proceeding. An order was accordingly made making her a party and requiring her to answer and set forth her claim to the fund.

Her answer was seasonably filed, in which it was alleged that on the 9th day of March, 1922, the defendant, Harry L. Osmond, was indebted to her in the sum of $413 upon an account stated for money loaned and board furnished prior to said date; that for the purpose of securing payment of said indebtedness defendant executed and delivered to her an assignment of all moneys then due, or thereafter to become due from the garnishee company, not exceeding the said sum of $413; that said assignment was filed with and accepted by said garnishee company prior to the 28th day of March, 1922, the date, when the writ of garnishment was served.

Plaintiff in reply denied the execution and delivery of the assignment, and also alleged that it was fraudulently made and without consideration. The amount of the fund in question is $99.99, /that being the amount of the wages earned by defendant at the time the writ was served.

The court to whom the case was tried without a jury found for the interpleader, Elizabeth Osmond, and from the judgment entered thereon plaintiff appeals.

The only errors assigned of sufficient merit to require consideration are finding No. 2, wherein the court found that the defendant, Harry L. Osmond, between the 1st day of September, 1921, and the 10th day of March, 1922, became

indebted to the interpleader, Elizabeth Osmond, in the sum of $413 upon an account stated for money loaned defendant and board furnished to him between said dates, and finding No. 5, wherein the court found that the assignment from defendant, Harry L. Osmond, to the interpleader, Elizabeth Osmond, was made in good faith, for a valuable consideration, and was in every respect a valid assignment of all moneys due at the date of its execution or thereafter to become due from the garnishee company to the defendant, Harry L. Osmond, for services rendered, not exceeding said sum of $413; that said assignment is not void nor contrary to public policy, nor was it made to defraud the plaintiff or any other person, nor to prevent the judgment or decree of the court made and entered in favor of the plaintiff the 11th day of December, 1920, or any other judgment or decree, from being carried into full force and effect.

A considerable amount of superfluous matter for some reason or other was incorporated into the bill of exceptions, the only effect of which was to complicate the case and "add to the confusion."

As we read the record the material facts seem to be that on December 11, 1920, appellant, Ruby Eleanor Osmond, procured a divorce from defendant, Harry L. Osmond, was awarded by the court the custody of their minor child and the sum of $40 per month for support of herself and said child. Some portions of the alimony appear to have been paid, but in September, 1921, it was ascertained by some proceeding in court that the sum of $105 of the alimony had not been paid. Garnishment proceedings were instituted by plaintiff, and the sum of $57.35 obtained thereby and credited upon the above indebtedness. That appears to have been the last payment of alimony received by the plaintiff.

Because of the garnishment proceeding, defendant was notified by the company that a third garnishment would result in his dismissal from the railroad company's employment, and he was advised to attend to the matter at once.

After the garnishment above referred to, the defendant, Harry L. Osmond, temporarily ceased working for the rail-

road company and procured leave of absence. It appears he could not get other work in Salt Lake City, and went elsewhere in the month of October, 1921. Up to that time, according to the testimony of his mother, Elizabeth Osmond, interpleader herein, defendant owed her for board the sum of $40. She testified that after that she wired him money from time to time at different places until February, 1922, when she loaned him $18 to bring him home. She loaned him $10 to pay for his board after he came home and $20 to purchase clothes for himself for his father's funeral. The remaining items are $25 for board and $15 to pay his attorney. The aggregate amount is $413, all of which she testified he promised to pay as soon as he could get work and earn the money.

While the testimony of his mother is vague and unsatisfactory as to what her son was doing and where he was during his absence from Salt Lake City, it is nevertheless deducible therefrom that he was unemployed, earning no money, and in need of assistance. During the same time her husband, defendant's father, was ill, unable to work, from which illness he died in February, 1922. Because of her husband's illness and inability to work as represented by her, she found it necessary to insist that the advances made to her son be treated as a loan to be paid by him as soon as he was able to earn the money. In March, 1922, he resumed work for the railroad company at Kemmerer, Wyo., and on March 9th, at the request of his mother, executed the assignment in question here. She testified it was done to secure his indebtedness to her, and that she had no intention of defrauding the plaintiff. It is possible to infer from her testimony that, if there had been no threat or fear of garnishment, she would not have required an assignment, but, as stated by her, in substance, she thought she had as much right to secure the indebtedness of her son to her as plaintiff had to secure the obligation owing to her.

As far as concerns the alleged indebtedness of defendant to his mother, the evidence pertaining thereto is not contradicted by any evidence in the record. Neither can it be said that it is so unreasonable or improbable as to be wholly unbelievable. If her son was without work and needing

assistance, to say the least it was not unnatural for his
mother to help him to the extent of his necessities and        1, 2
her ability to assist him.  Nor are we prepared to say
as matter of law that because Elizabeth Osmond was
the mother of defendant that therefore the transaction be-
tween them was fraudulent and void either as between them-
selves or as against the plaintiff.  While such a relationship
in cases of this kind is a factor to be considered by the trial
court in determining the intent of the parties, it would be
going altogether too far for this court to reverse a finding
of the trial court upon that ground under the facts of the
instant case.  As we read the record, we regard that as the
principal ground upon which appellant relies, for, if it were
not for the relationship of the parties, there could be no
question under the evidence but that the assignment was
based upon a valid consideration and was made in good faith.

Appellant cites many authorities bearing upon the ques-
tion of fraud, fraudulent conveyances, etc., all of which may
be conceded as apt and pertinent authority in cases to which
they apply.  Reference is made to the following:  12 R. C. L.
537, and 543 to 546, relating to fraudulent conveyances. The
references relate mainly to cases where the debtor reserves a
benefit to himself.  It goes without saying that this cannot
be done to the injury of creditors.  As to them it is fraudu-
lent and void; but we fail to see how such doctrine applies
to the instant case.  The assignment in question was to
secure payment of obligations already incurred, if we are to
believe the uncontradicted evidence in the case, and just how
or wherein defendant reserved any benefit to himself does
not appear from the record before us.  In order to make
it so appear we would have to inject into the record inferences
and conclusions beyond the power of this court, whose func-
tions in dealing with facts are limited and circumscribed.

Appellant also refers to Bump on Fraudulent Conveyances
(3d Ed.) p. 200, which we cite without comment other than
to say that the authority referred to, as well as the others
which appellant has cited, could have been applied and made
use of in the court below, if it had believed the facts war-
ranted their application.  Appellant cites numerous other

authorities, but we are of opinion that those already mentioned cover every point upon which she relies. Unless we were convinced that the facts found by the court are clearly against the preponderance of the evidence, we have no power to reverse the judgment.

As we are not so convinced, it is the opinion of the court that the judgment should be affirmed, and it is affirmed accordingly, at appellant's costs.

GIDEON, FRICK, and CHERRY, JJ., and WOOLLEY, District Judge, concur.

WEBER, C. J., did not participate herein.